MELVIN C. KRAFFT, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 45548.)

Court of Claims, November 29, 1966.

*Francis Patrick Rivette* for claimant. *Louis J. Lefkowitz, Attorney-General* (*Donald C. Glenn* and *Joseph G. Medicis, Jr.,* of counsel), for defendant.

MARSHALL E. LIVINGSTON, J. This is an action for false imprisonment and malicious prosecution. The claim was timely filed and has not been assigned.

On August 22, 1963, the claimant, Melvin C. Krafft, owned and operated a garage on North Main Street in Minoa, Town of Manlius, New York. At about 4:30 P.M. that day New York State Trooper Wayne E. Beyea called at claimant's garage and asked to borrow a set of jumper cables. Mr. Krafft was told by Trooper Beyea that the battery on a radar car which the State Police intended to operate in the vicinity was dead, and the cables were needed to activate it by using power from the other car assigned with the unit.

Trooper Beyea, who concededly had never met Krafft before, testified, and it was not disputed, that Krafft refused to loan the equipment, stating in substance that until he, Beyea, stopped abusing motorists and started apprehending criminals he could not borrow any equipment. Whereupon Beyea merely said, " Thank you ", left the premises and proceeded to another garage where he procured the needed cables.

Claimant's version of this occurrence was essentially the same. He testified that Beyea was courteous and that he made a simple request, " which I refused ". Then Krafft volunteered that his garage had been burglarized previously, and he intimated that the State Police had been lax about their investiga-

tion. Claimant said he commented on this to Beyea when he came for the cables, and said: " Some State Troopers I get along with, and some I don't."

It appears that Beyea had been a State Trooper a little over a year, had finished probationary training, and from April 1, 1963, had been continuously assigned to operate a radar unit at various locations in the area.

Troopers Clinton C. Rich and Donald L. Evans were also assigned to this detail as pickup men, and it appears that neither of these officers had had any previous contact with the claimant whatsoever. This is significant in the light of further events.

Claimant left his place of business around 5:00 P.M. on August 22, 1963, riding a large Harley-Davidson motorcycle north on Main Street to its intersection with the Kirkville Road and then proceeding west in a 35 mile per hour zone to the house of one Robert Greiner, which is located about one half mile from the intersection. Mr. Greiner appeared not to be at home, so claimant returned over the same route.

The State Police radar car, which has an effective maximum range of 600 feet, was located about 1,000 to 1,500 feet west of the North Main Street-Kirkville Road intersection on the north side of the highway facing west. Kirkville Road is a two-lane highway, straight and level, and in the speed zone there was a double solid line restraining traffic going east to the south side of the road. The posted speed limit was 35 miles per hour. Trooper Beyea characterized the traffic as being heavy, and he was not disputed by claimant.

As claimant was returning east, Trooper Beyea concluded that he was driving so slowly that the heavy traffic behind him was unreasonably impeded and could not lawfully pass because of the double solid line.

On August 22, 1963, section 1181 of the Vehicle and Traffic Law provided: " No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." Thus the very wording of the section sets a standard of compliance which depends on the judgment of the officer enforcing it. The so-called traffic infraction for which the claimant was subsequently given a ticket at the office of the Justice of the Peace of the Town of Manlius, New York, occurred in the presence of the arresting officer. Therefore, the arrest without a warrant for the alleged traffic infraction was authorized pursuant to section 155 of the Vehicle and Traffic Law and section 177 of the Code of Criminal Procedure.

While claimant was stopped for the alleged violation of section 1181 of the Vehicle and Traffic Law, Trooper Beyea directed him to start his motor so the trooper could determine whether the muffler complied with subdivision 1 of section 381 of the Vehicle and Traffic Law, relating to unnecessary noise.

Although Trooper Beyea ordered and directed claimant to start the cycle motor, claimant flatly refused to do so and said that if it was to be started, the trooper would have to do it himself. Thereupon claimant was arrested a second time for violation of section 1102 of the Vehicle and Traffic Law in refusing to comply with the order and direction of the trooper.

The question here for decision is whether or not the claimant was obliged to start his vehicle for an auditory inspection by the trooper. The solution lies in the Vehicle and Traffic Law (§ 390; § 381, subd. 2) which form the basis of the charge of "refusing to comply".

Section 390 of the Vehicle and Traffic Law authorizes inspection of motorcycles to detect inadequate equipment, and section 381 (subd. 2) thereof requires the operator of the cycle to permit an officer to make such tests as may be necessary to determine whether the muffler is suitable. This was a reasonable and lawful order and direction for the trooper to make, and the claimant's refusal to obey was sufficient to authorize his second arrest.

In *People* v. *Byron* (17 N Y 2d 64, 67) the court (KEATING, J.) in upholding the constitutionality of subdivision 31 of section 375 of the Vehicle and Traffic Law pertaining to motor vehicle mufflers said: "It is our opinion that the statute in question states with sufficient clarity the rule which is to be obeyed. The test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding."

The import of this language is clear. The direction of the officer informed the claimant of what was required of him, and the trooper cannot be held for an "unlawful arrest" when the claimant refused to comply. It is immaterial that when the cycle was later driven to claimant's home, followed by the trooper's car, that the muffler inferentially was suitable. No violation was charged.

The gist of an action for false arrest and imprisonment is unlawful detention of the claimant by reason of the unlawful act of the officer in arresting him.

It matters not whether Trooper Beyea was justified in making the arrest for driving too slow. The act occurred in his presence, and in his judgment at the time of the arrest, a violation had been committed. The section does not lend itself to precise application; however, I cannot say Trooper Beyea's determination to apprehend the claimant was unlawful when the problem of heavy traffic, which is not denied, was present. The lack of probable cause is not an element of a cause of action for false imprisonment (22 N. Y. Jur., False Imprisonment, § 6).

Likewise, the final disposition of the cases before Justice of the Peace GORDON on December 26, 1963, is not relevant to an action for false imprisonment (22 N. Y. Jur., False Imprisonment, § 7).

The charge of malicious prosecution has not been sustained by the proof. A distinct and essential element of the cause of action is malice, which must be proved as an independent fact in order for the claimant to sustain his action (36 N. Y. Jur., Malicious Prosecution, § 25).

Claimant's proof here is void of any suggestion of improper motives or bases whereby Trooper Beyea intentionally rode roughshod over the claimant's rights and summarily prosecuted him with ill will. Claimant testified that at all times Trooper Beyea was civil, courteous and quiet. Claimant was not subjected to abuse. Claimant attempts to show an inference of malice on the theory that because he refused the use of the jumper cables to the State Police, they decided to retaliate. To find malice from the claimant's proof would be pure speculation.